Good morning, your honors. May it please the court, my name is Leonard Scharenow, I represent the appellant. After reviewing the facts of the record of this case, the only conclusion I would submit that any intelligent layman would conclude from this is, how can this be? We have a two year sentence for a first offender who placed safety barrels containing chemicals in a remote area of the desert where virtually no one lived. These were barrels that were specifically designed to prevent spills. There was a small amount of chemicals that did spill, but the record establishes that this was accidental. This was a crime that was intended not to pollute the environment or damage the environment, but simply to shift the costs of disposal of the barrels from the company that was owned, that had them, to the county of Riverside. The barrels were placed on Riverside County property, and shortly after that happened, the appellant was arrested by Riverside County. He was prosecuted by reached a resolution which involved a guilty plea to disposal of hazardous waste, and the payment of $86,000 in fines and penalties. And that everybody believed at the time concluded that matter. Five years later, the federal government, five years before the federal statute of limitations expires, indicts appellant for exactly the same offense. I wanted to introduce that conviction in connection with the indictment in the case which had unrelated charges, which involved the operation of a chromium plating business in Compton, California, which was completely unrelated to any of the events that occurred in Riverside County. What difference does it make what the government's motive was for indictment if the indictment is permissible? And I know that's a big if to you, but why do we care what the government's motivation was if it otherwise acted permissibly? Well, I don't believe it did act permissibly. It had, it's my opinion that the government had absolutely no, there's no federal interest whatsoever in the prosecution of appellant for that offense. The barrels left on Riverside County property. The only victim was Riverside County. There was no damage to the environment, and there was no continuing residual effect from the crime that it occurred. Are you arguing that there's no federal jurisdiction? I am arguing that... And if so, where did you make that argument below? No, I did not. But what I am arguing is that in the matrix of events that comprise this matter, you have the federal government taking a case in which it may have had some technical jurisdiction, but had, but included it where it had no real interest for the simple purpose of prejudicing appellant in his trial. With regard to unrelated events, and it did that by contort, by a great amount of contortion. If the plea in the Riverside County case was by one corporation, there was another corporation owned by different people with some different facility. And in the indictment, the government indicted the corporation that pled as an AKA of the corporation that operated the chromium facility. And so the government really, you know, went through a severe contortion. And then what it did was it argued to the district court that its own pettit policy, which would have normally precluded a successive prosecution, was not applicable because it was a corporation that pled guilty instead of him personally. And then argued to the court, but the guilty plea should be admissible in the court because as an officer of the corporation, he was responsible and had to make the decision to allow the corporation to plead guilty. And I when you're dealing with a party in civil litigation, you know, they can say anything when you're dealing with a party, which is the Department of Justice. My point to the court is that is taking and distorting the process way beyond which is appropriate and which is legally justifiable. That's that is our conclusion from this state facts. We are not arguing a purely jurisdictional issue, although there is Supreme Court law that says that the federal government didn't, I think, in a gun case, didn't have jurisdiction to prohibit guns within a certain distance of a school. I agree that this is a very troubling chain of events that led to this. And five days before the statute of limitations, this this federal prosecutions brings forth. But legally, what can we do about it? I mean, that that's the problem I have. Well, I question we had a little while ago about being human or and I'm not sure we can do that or find facts or anything like that, that that we can hang our hat on to give you relief. All right. Well, let me start out by saying something that Justice Felix Frankfurter once said, which is that judges shouldn't ignore what other people, other men know. And I think what that is intended to mean is that everyone reading these facts understands that the system has miscarriage is misperformed and that there is an injustice that has been visited upon appellant. And so the issue is, how do we find an issue? I think this unreasonable delay provides the mechanism for the court to do it because the delay prejudiced appellant. And specifically how specifically? Well, during the five years. First of all, the credit card, the American Express credit card receipts disappeared. OK. And according to when that happened, it happened within six months of his of the transaction, according to the record. So if if this had been eight months after instead of five years after, he still would have had that same problem. That's correct. But the prejudice doesn't necessarily flow from a five year period. The length of the period is not necessarily significant. It's a factor. But this particular piece of evidence was absolutely critical in determining whether or not appellant was at was in Riverside when the barrels were left there because his brother testified that he was the one that signed the receipt. And the appellant was left at the trial with the testimony of a multiple felon drug addicted brother instead of a the credit card receipt, which would have been conclusive, you know, assuming that the brother's testimony was correct, conclusive on the issue of whether appellant was at Riverside on the night that the barrels were left there. I think could be more prejudicial than that. It's prejudicial. But how is it related to the delay? I guess is my question. And one would normally think that, let's say, six and a half months after a transaction would be pretty prompt. And I would be hard to view that with a five year statute of limitations as being undue delay. And yet the same prejudice would have occurred. And I guess what I'm trying to understand is that the sort of you're saying, on the one hand, it's the drawn out nature of it. It's the almost at the end of the five year period nature of it. And I'm kind of a disconnect. Now, what I'm saying is that the prejudice is so self-evident from the nature of the physical evidence and testimony that was lost that any whether it was six months or five years is relatively insignificant in the analysis of whether or not to grant a reverse conviction. You have a situation where the credit card receipt is lost. There is a declaration from a witness, you know, who says that appellant was not in Riverside on that night. You have the barrels which were capable of fingerprints showing, you know, keeping fingerprints on them. They were destroyed. You have the record show when they were destroyed. They were shipped to the disposal facilities right after during the cleanup phase. Right away. Pardon me. So again, right away, fairly close to the time of the transaction. Most of the evidence was destroyed fairly close to the time. Well, I guess I guess what's troublesome about that is that almost entirely your your evidence went away very soon after the after the incidents in question. And and so I guess I still have a hard time seeing how that makes the delay unreasonable because it's the destruction or loss of the items. This sort of happened very quick. It's not as it's Alzheimer's. And if you'd only done it, you know, after four years instead of five. Well, there were two pieces of evidence that weren't didn't disappear quickly. One were the soil profiles that were done at the disposal facility. They were kept for a period of five years after the event and were destroyed. You know, not too long before the the the indictment was returned. The salt soil profiles would have demonstrated that the soils went to a disposal facility that doesn't even take hazardous waste. These soils were shipped as non-recreation soil. It's in the record on the on the transmittal documents. They were submitted as non-recreation waste and they were sent to a class one disposal facility. So this is not an issue. And those soil profiles would have contradicted the testimony of the agent who's with all the evidence destroyed. He was the only one who was providing evidence about the event. And, for example, in the record, the agent testified that at site one, the liquid that spilled a field pH tested at pH 14 when the material data sheet for that liquid showed that it had a pH of seven. So, yeah, it indicates that the field test, either the soil, there was something in the soil and the test was done even before the liquid hit it or that the agent did the test wrong or there was something wrong with the paper. But the piece of evidence with regard to the soils analysis was available and could have undermined or impeached the testimony of the agents with regard to whether or not there was any damage. At the time of the event. The other piece of evidence that did not disappear was, of course, the witness who was around for a couple of years before he relocated to Mexico and he put in a declaration. I think the court invaded the providence of the jury by deciding that he didn't think the declaration had credibility. That's not wasn't the issue. The issue was, is that there is a witness who provides certain amount of information. He's gone. Pellin had nothing to do with his disappearance. But it's five years later. There are a couple other things in the record. The government started this case or became aware of started its investigation of the chromium plating facility in the year 2000, but didn't do anything with regard to it because the prosecutor had other things to do. And the case agent was on maternity leave. Well, and it's during that period of time that the soil profile analysis disappears and the case agent and the witness leaves the country. Now, I'm not saying that the government purposefully acted, you know, so those things would happen. But the fact of the matter is, is that the case wasn't active when it could have been an indictment. Couldn't have been returned a lot earlier than it might have been. And if it had been returned earlier, the witness might have been available and the soil profiles might have been available. And then. So those are two material issues. May I ask a question that that bothering me? It was settled in a civil settlement that you had that there had been some damage to the land, that there had been some leakage. No, no, that's not correct. There was possibility. There was a civil settlement with Riverside County with regard to the disposal of waste, which resulted in fines and penalties of eighty six thousand dollars. There was no finding that the that some one of them leaked. There was nothing in the record of that settlement that, as I recall it, that showed that there was chemicals. I think it was just say your argument seems to be now that they were not dangerous chemicals. Argument to the land and that seems to run counter to the settlement with the county of Riverside. Well, if I recall the language, I don't think it was there any admissions in those documents. They're in the record. I just don't recall. There are these sentencing issues and I'm kind of running out of time. I don't know if the court wants to keep on going with that. Your time has expired, but we'll give you a couple of minutes for rebuttal. I believe that the district court improperly enhanced appellant sentence on a number of levels. The first one issue is the co-defendant who was acquitted on a rule twenty nine motion. The application no one to to the sentencing guideline says a person who is not criminally responsible for the commission of offense is not a participant. And I can't rule twenty nine acquittal as it's close to a finding that someone is not criminally responsible as you can find. The record is clear. The judge, the district court said that that this was a weak case in the extreme with regard to the co-defendant. And the only testimony that came in with regard to the co-defendants participation was the testimony of the agent, Agent Hoy, as to a hearsay statement from Corey Ames, the former girlfriend employee who testified against appellant at trial. Counsel, I think maybe I miscommunicated. My intention was to give you some rebuttal time after the government had argued since you have used up your whole time. We understand that you've waived none of the arguments in your brief. Good morning, Your Honors. May it please the court, Dorothy Kim on behalf of the United States. The government submits that both the conviction and the 24 month sentence should be affirmed on appeal. With respect to the conviction issue, the district court properly refused to dismiss the indictment for pre-indictment delay because the defendant failed to meet his burden of showing actual prejudice or the second prong of the inquiry that the length of the delay when weighed against the reasons for it offend principles of justice. Now, the defendant's complaints about actual prejudice fall into two categories. The first is the type of evidence that's ordinarily destroyed during the course of an investigation, and that includes the pH samples, the barrels, and the soil samples. Now, the defendant argues that he was prejudiced because they may have exonerated him, but the defendant's arguments are nothing more than speculation, and under the case law, this is insufficient to demonstrate actual prejudice. With respect to the second category of evidence, that's the witness testimony. That's Nereo Prestigui, and the defendant submitted a declaration from Prestigui, which can be found at the excerpt of Record 128 and 129. Your Honors, at first, the defendant could not prove that this witness's testimony was, in fact, unavailable because the witness never testified in his declaration that he would not have testified in a Rule 15 deposition. And, in fact, the defendant never noticed any such deposition. And even assuming that Prestigui's testimony was unavailable and that it was lost, the defendant could not demonstrate that the loss was caused by the delay in the prosecution. Now, the declaration notes that Prestigui left in 1998. In June of 1998, the defendant was engaged in the Riverside prosecution, and there's no evidence that the defendant offered up the testimony of Prestigui to show, look, the defendant had nothing to do with it, it was me. Although there's no evidence in the record, the defendant proffered at the trial court that Prestigui had actually left for Mexico in 1999. Now, there's no dispute that the federal government did not begin investigating these allegations until June of 2000, or the middle of 2000. Therefore, Prestigui was already long gone by the time the government first learned about the defendant's activities. And finally, the declaration did not demonstrate that had the government filed charges earlier, Prestigui would, in fact, have testified on behalf of the defendant. In this case, Your Honors, Prestigui had a Fifth Amendment right not to so testify, and therefore the unavailability of that witness does not demonstrate actual prejudice. With respect to the second prong of the pre-indictment delay inquiry, although counsel argues here that the government's motives were bad and that the government somehow had sinister motives in bringing the charges, the district court expressly found that the government had not purposely delayed in bringing the charges. I'd also note that although it's true that in the inquiry, the Fifth Amendment inquiry of pre-indictment to demonstrate bad motive on the part of the government, what the defendant really complains about is the destruction of evidence and missing evidence. And under the Youngblood line of cases, the defendant must show that the government acted in bad faith in failing to preserve evidence, and that clearly was not the case here. If I could move on to the sentencing issues. Let me tell you where I have the most problem is the two-level enhancement for being a man of truth. A sentencing court may consider evidence excluded at trial, but it must have a sufficient indicia of reliability. And here, the district court considered uncorroborated hearsay evidence from ex-girlfriends without explaining why it considered this evidence reliable. And don't we need to be manned under Eggie and Garcia-Sanchez for the court to determine that the hearsay statements of the ex-girlfriends were sufficiently reliable? Well, Your Honor, the two ex-girlfriends were named Lau and Ames. And their two statements actually corroborated one another. Can you have two hearsay statements? I mean, can those be the corroborating statements? Can one hearsay statement corroborate another hearsay statement? Yes, Your Honor. The evidence at trial demonstrated that Ames and Lau had not spoken to one another in anticipation of the trial, that they had a very bad relationship with one another. And yet they gave consistent testimony that the defendant said, I am concerned about this Denny's receipt. I'm concerned that this will link me to the dumping in the desert. And I dumped the desert. What Lau stated was he said, I dumped in the desert with Raina. And what Ames' proffer testimony was, was that he had dumped in the desert with Raina and Pristigli. Those two statements, in the circumstances of this case, do corroborate one another. In addition — What's your authority for that? I should know it, but I don't. I apologize, Your Honor. I don't have a case site with me. There are cases out there that say — I have not researched this issue except that the hearsay statements, I believe, can corroborate one another, and I don't have specific cases in mind. Thank you. In addition, it was corroborated by her testimony at trial that prior to their dumping, she heard the defendant tell Raina, remove those drums because we're going to go dump those tonight at the desert. The Denny's statement also corroborates their testimony in that the Denny's statement showed a charge at Denny's. The American Express statement showed a charge at Denny's. And the defense did have an opportunity to cross-examine both Ames and Lowe during trial. If you read the record, there's lots of evidence about their motive to lie, their history with the defendant, the history with one another, this fight over a cat. All of that demonstrates that insofar as those ex-girlfriends had a motive to lie, that motive was amply brought out on cross-examination during trial. So he was supposed to manage, I assume, another person. Raina is out of the picture because she's acquitted. So he's managing Lowe and Ames? I mean, who are the people that he's managing? The district court found that the defendant managed both Sal Raina, who was the co-defendant who was acquitted at trial, and Nereo Prestiqui, who was also an employee at the company at the time. The district court expressly found, or expressly stated, that it was considering not only the evidence adduced at trial, but also the proffer testimony of Lowe and of Ames. So with respect to Raina, it's your position, if I understand it correctly, that even though Raina was acquitted, because that standard is beyond a reasonable doubt, the district judge is still permitted to find by a preponderance of the evidence, or even by clear and convincing evidence, that Raina was a participant, and that that's okay? Yes, Your Honor. And the district court recognized that there were two different standards when he made the finding. He said, although I found that no reasonable jury could find beyond a reasonable doubt that Raina was a criminal participant, I find that the evidence, not only the evidence at trial, but the proffered testimony of Lowe and Ames, demonstrate by a preponderance of the evidence that Raina was involved. And how many people does he have to manage to be a manager? Just one for this application to apply, Your Honor. So if the judge is correct about Raina, we don't have to worry about the other individual? That's correct, Your Honor, although the district court did make an explicit finding that the defendant had also supervised Prestigui. In what way? Can you explain to me how he had supervised Prestigui? Well, Prestigui, it was the government's contention that Prestigui was one of the three people who were involved in the driving out of the drums to the desert and the dumping of the desert. I'm sorry, the dumping of the drums at the desert. The testimony that supported that finding was that of Corey Ames, the proffered testimony that the defendant admitted to her that he had dumped with Raina and Prestigui. And the Denny's statement, which everyone agreed the amount on the statement was such that three people would have eaten a meal at Denny's on the night of the dumping. The government submits that the district court also properly applied 2Q1.2B1B and increased the defendant's base offense level by four levels for the discharge of a hazardous waste and then accounted for the relatively short duration of the discharge and the relatively low severity of the actual contamination when it downwardly departed two levels under Application Note 5. The parties agree that for the enhancement to apply, there must be an actual contamination. Here, there was one drum leaking at Location 1 in which 30 gallons of waste that had a field pH of 13 was found leaking in a storm drain and then one drum at Location 2, and this is the drum upon which the district court focused its attention. That was leaking a liquid that had a pH of less than one and which stained the soil beneath causing a 12 inch by 12 inch stain. The defendant argues that something more than that leaking drum at Location 2 is required for a finding of actual contamination, but the well-established case law in this circuit is that this is sufficient to support a finding of actual contamination. In fact, Your Honors, it was fortuitous that the investigators found the drums as promptly as they did. They were located in a remote area in the desert and therefore the fact that the drum was leaking just one day was not due to any activity by the defendant but the prompt response of the Riverside County investigators. Moving on to the defendant's double counting issue, the district court did not double count when it enhanced defendant's offense level for transporting and dumping hazardous waste at unpermitted sites. Although this circuit has not reached the issue, every other circuit to do so has determined that there was no double counting and the government submits that this court should reach the same conclusion. The district court did not err when it declined to downwardly depart in defendant's offense level for Application Note 8. Discretionary decisions to not depart are not reviewable by this court and the record does support a finding that the district court exercised its discretion not to depart. And finally, the district court's finding that the defendant was not in one of those rare categories of defendants who perceived a trial and yet was not a clearly erroneous one. And for those reasons, the government submits that both the conviction and the sentence should be affirmed. Thank you, Your Honors. Thank you. And we'll give you a minute for rebuttal. Yes, Your Honor. With regard to the two-level enhancement for the managing, it's really important for the court to be clear on the record. When the government says that the proffered testimony of Lau and Ames was that appellant, they said that appellant had committed this crime with Rayna, that represents the statement of the prosecutor as to what they would have said if they had been called to the stand. The only testimony in the record with regard to the management is the testimony of Agent Hoy, who testified briefly as to a June 11, 1997 conversation that he had with Ames. And that was after Rayna had been acquitted as the trial continued. So the record contains no testimony from Lau and Ames with regard to their issue. In other words, the appellant did not have an opportunity to cross-examine Lau and Ames with regard to their statements as to who participated in the offense. And I think that that's a very critical issue that somehow has gotten lost. Well, I've tried to bring it out, but there is no testimony from Lau and Ames on this issue of management directly. They testified only in the government's case in chief at the time when the court had excluded them from testifying about statements made by appellant that included Rayna. How does Prestique fit into all this? Of the record is that the court made the enhancement based on the issue of management of Rayna. And although he talked about Prestique, there was no testimony in the record, there is none by a witness with regard to Prestique at all, period, not even by Hoy, because Hoy did not know who Prestique was at the time. So, you know, I think there is absolutely no record whatsoever from which the district court can conclude that Prestique was managed by appellant in the commission of the offense, certainly not based on what any witness said in front of him. And how many does he need to manage? He needs one other to get the two-level enhancement. Thank you, counsel. Your time has expired. We appreciate the arguments of both parties. This case is submitted. And we will stand adjourned for this morning's session. Thank you. Counsel have all been pretty helpful in this morning's cases, and we appreciate it. All rise.
judges: Gibson , D.W. Nelson, Graber